UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIENVENUE MBITUYIMANA,

Petitioner,

v.

KEVIN RAYCRAFT et al.[1],

Respondents.

CASE NO. 1:26-cv-02181

HON. ROBERT J. JONKER

______________________________/

# OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1). For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## FACTUAL BACKGROUND

Petitioner is a native and citizen of the Democratic Republic of the Congo (DRC). (Resp., ECF No. 6, PageID.22). On September 30, 2015, Petitioner was admitted to the United States as a refugee. (*Id.* at PageID.23.). On December 23, 2020, Petitioner was convicted of second degree criminal sexual conduct (personal injury). (*Id.* at PageID.23). He was sentenced to 365 days in jail. (*Id.*) On December 21, 2021, ICE Enforcement and Removal (ERO) officers served Petitioner with a warrant of arrest. (*Id.*) On April 20, 2022, Petitioner was ordered removed from the United States. (*Id.* at PageID.24). The immigration judge who entered the order of removal also granted

[1] On July 12, 2026, Matthew Putra was sworn in as U. S. Immigration and Customs Enforcement's Acting Field Office Director for Enforcement and Removal Operations Detroit, so he is automatically substituted as a party to this case under Federal Rule of Civil Procedure 25(d).

Petitioner request for deferral of removal under the United Nations Convention Against Torture. (*Id.*) ERO released Petitioner on an Order of Supervision in June of 2022. (*Id.*)

On December 19, 2022, Petitioner was convicted of operating a vehicle while intoxicated. (*Id.*). On December 9, 2025, ERO arrested Petitioner when he reported for a check-in appointment. (*Id.*) Three days after his arrest by ERO, Petitioner was convicted of aggravated indecent exposure and interference with a policy investigation. (*Id.*) Based on these convictions, ICE served Petitioner with a Notice of Revocation of Release. (*Id.*)

Since taking Petitioner into custody on December 9, 2025, ERO has been attempting to effectuate his removal. (*Id.* at PageID.25). ERO has also been conducting periodic reviews to determine if Petitioners post-removal confinement should continue. (*Id.*) At both his 90-day and 180-day reviews, ERO concluded that Petitioner should continue to be held in detention. (*Id.*)

On March 6, 2026, Petitioner's attorney informed ERO that Petitioner would not be opposed to being removed to a country other than the DRC. (*Id.*) ERO placed Petitioner on a list of detainees scheduled for third-country release to Uganda. (*Id.*) Respondents indicate that removal missions to Uganda have been occurring frequently and that, at present, about ten individuals per month have been successfully removed to Uganda. (*Id.*)

**PROCEDURAL BACKGROUND**

Since being taken into custody by ICE, Petitioner has filed three habeas petitions with this Court. Both of the prior Petitions have been denied. *See* Opinion, *Mbituyimana v. Lynch*, 1:26-cv-1333, ECF No. 8, PageID.127–28 (W.D. Mich. June 15, 2026); Opinion, *Mbituyimana v. Unknown Party*, 1:26-cv-1915, ECF No. 14, PageID.105 (W.D. Mich. July 23, 2026). In his most recent § 2241 petition, Petitioner once challenges the lawfulness of his current detention and asks the Court to assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.9). In an

order entered on July 29, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 5). Respondents filed their response on August 3, 2026 (ECF No. 6), and Petitioner filed his reply on August 5, 2026 (ECF No. 8).

**HABEAS CORPUS LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

**DISCUSSION**

The parties agree that Petitioner is subject to a final order of removal. As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). 8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or

> unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed. 533 U.S. at 682. In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699. Therefore, the Court concluded that the removal itself must be reasonably foreseeable to fall within post-removal-order detention authorized by the statute, *Id.* The Court indicated that there was no specific point in time at which the detention became constitutionally impermissible, and that the allowable period would vary from case to case. *Id.* Still, to assist the lower courts in making the difficult judgment calls about the lawfulness of detention, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701. Even after six months , though, the Court made clear that the detention may continue unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.* Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner has not provided any evidence to show that his removal is not reasonably foreseeable. By contrast, the government has provided evidence showing the removal is

proceeding. Specifically, the government has provided affidavits affirming that the removals to Uganda have been proceeding and that Petitioner is on the list of detainees scheduled to be removed to Uganda. Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution. *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701. Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention. *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation. At this point, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future. Accordingly, the petition will be **DENIED** without prejudice.

## CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: September 8, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge